1  DARREL J. HIEBER (CA Bar No. 100857)
   darrel.hieber@skadden.com
2  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   300 South Grand Avenue
3  Los Angeles, California 90071-3144
   (213) 687-5000 (telephone)
4  (213) 687-5600 (facsimile)

5  MARK S. CHEFFO (admitted *Pro Hac Vice*)
   mark.cheffo@skadden.com
6  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   Four Times Square
7  New York, New York 10036-6522
   (212) 735-3000 (telephone)
8  (212) 735-2000 (facsimile)

9  Attorneys for Defendant Amgen Inc.

10

11

12

13                  UNITED STATES DISTRICT COURT

14          FOR THE CENTRAL DISTRICT OF CALIFORNIA

15                       WESTERN DIVISION

16  In re: EPOGEN AND ARANESP          )  Case No. 2:08-ML-01934 PSG (AGRx)
17  OFF-LABEL MARKETING AND            )
    SALES PRACTICES LITIGATION         )  (1) DEFENDANT AMGEN INC.'S
18                                     )      NOTICE OF MOTION AND
                                       )      MOTION TO DISMISS THE
19  This document relates to:          )      AMENDED CONSOLIDATED
                                       )      CLASS ACTION COMPLAINT;
20       ALL ACTIONS                   )      and
                                       )
21                                     )  (2) SUPPORTING MEMORANDUM
                                       )      OF POINTS AND AUTHORITIES
22                                     )
                                       )  Date: May 11, 2009
23                                     )  Time: 1:30 p.m.
                                       )  Judge: Hon. Philip S. Gutierrez
24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>NOTICE OF MOTION AND MOTION</u>

TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on May 11, 2009, at 1:30 p.m., in the courtroom of the Honorable Philip S. Gutierrez, located at 255 East Temple Street, Los Angeles, California, Defendant Amgen Inc. ("Amgen") shall, and hereby does, move the Court pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Plaintiffs' Amended Consolidated Class Action Complaint (the "Amended Complaint")[1] for lack of standing and subject matter jurisdiction and for failure to state a claim.  The grounds for this motion are:

1.      The Amended Complaint should be dismissed as an impermissible attempt to privately enforce the federal Food, Drug, and Cosmetic Act.

2.      Plaintiffs' claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") fail because the Funds have not:  pled the critical standing elements of causation and injury; alleged an enterprise; or pled their claims with the specificity required by Federal Rule of Civil Procedure 9(b).

3.      Plaintiffs' state law claims are expressly preempted by the Employee Retirement Income Security Act because their adjudication would require the Court to interpret and apply the terms of Plaintiffs' employee benefit plans and would interfere with the Act's comprehensive civil remedial scheme.

4.      Plaintiffs' state law consumer fraud claims should be dismissed because Plaintiffs are non-California residents, the California statutes under which they bring their claims do not apply to non-residents' claims for injury occurring outside the state, and California's choice-of-law rules require application of other states' laws, many of which would bar Plaintiffs' consumer fraud claims as a matter of law for reasons in addition to those that would require dismissal under California law.

---

[1]   All references to the Amended Complaint are to the "Corrected" version filed February 24, 2009 [D.E. 54].

1    5.    Even if Plaintiffs could maintain claims under California law, they have

2  not adequately pled injury and causation, two required elements of those claims, or

3  pled their claims with the necessary specificity.

4    This motion is based on this Notice of Motion and Motion, the attached

5  Memorandum of Points and Authorities and accompanying Declaration of Mark S.

6  Cheffo, the pleadings and papers filed in this action, and such other matters as may

7  be presented to the Court before or at the time of the hearing.[2]

8  Dated:  March 6, 2009

9                    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

10                   By:   /s/ Darrel J. Hieber
                          Darrel J. Hieber

11

12                   Attorneys for Defendant Amgen Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[2]   This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on January 9, 2009.

1

# TABLE OF CONTENTS

2

3

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF FACTS ................................................................................ 3

STANDARD FOR DISMISSAL ...................................................................... 5

ARGUMENT ...................................................................................................... 5

I.      ALL OF THE FUNDS' CLAIMS ARE BARRED BECAUSE THE FDCA PROSCRIBES A PRIVATE RIGHT OF ACTION .......................... 5

II.     THE FUNDS' RICO CLAIMS FAIL FOR MULTIPLE REASONS .......... 10

      A.      The Funds Have Not Alleged Proximate Causation ........................... 10

      B.      The Funds Have Not Alleged a Cognizable Injury ............................ 14

      C.      The Funds Have Not Alleged a RICO Enterprise .............................. 16

      D.      The Funds Have Not Pled Their RICO Claims with Specificity ........ 18

III.    THE FUNDS' CLAIMS ARE BARRED BY ERISA ................................ 20

IV.    THE FUNDS CANNOT PLEAD CLAIMS UNDER CALIFORNIA LAW .................................................................................................... 22

      A.      California's Consumer Protection Laws Do Not Extend to Out-of-State Plaintiffs Alleging Conduct and Injury Outside of California ...................................................................................... 22

      B.      California Law Would Not Apply to the Funds' State Law Claims Under California's Choice-of-Law Rules ............................. 24

V.     THE FUNDS' CLAIMS FAIL UNDER CALIFORNIA LAW .................. 29

CONCLUSION ................................................................................................ 30

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

1

# TABLE OF AUTHORITIES

2

## CASES

3

4
*Aetna Health, Inc. v. Davila*,
   542 U.S. 200, 124 S. Ct. 2488, 159 L. Ed. 312 (2004) ....................................22

5
*Agostino v. Quest Diagnostics Inc.*,
   No. 04-4362, 2009 WL 348898 (D.N.J. Feb. 11, 2009) .................................27

6

7
*Agranoff v. LensCrafters, Inc.*,
   No. 07 C 4933, 2007 WL 4557080 (N.D. Ill. Dec. 21, 2007).........................21

8
*Alan Neuman Products, Inc. v. Albright*,
   862 F.2d 1388 (9th Cir. 1988) .......................................................................20

9

10
*Albertson v. Wyeth, Inc.*,
   63 Pa. D. & C. 4th 514 (Ct. Com. Pl. 2003)...................................................26

11
*Anza v. Ideal Steel Supply Corp.*,
   547 U.S. 451, 126 S. Ct. 1991, 164 L. Ed. 2d 720 (2006) .................. 10, 11, 13

12

13
*Association of American Physicians & Surgeons, Inc. v. Food & Drug Administration*,
   539 F. Supp. 2d 4 (D.D.C. 2008) .....................................................................7

14

15
*Association of Washington Public Hospital Districts v. Philip Morris, Inc.*,
   241 F.3d 696 (9th Cir. 2001) .........................................................................10

16
*Associated General Contractors, Inc. v. Carpenters*,
   459 U.S. 519, 103 S. Ct. 897, 74 L. Ed. 2d 723 (1983) ....................................5

17

18
*Baker v. Family Credit Counseling Corp.*,
   440 F. Supp. 2d 392 (E.D. Pa. 2006) .........................................................25, 27

19
*Barbara's Sales, Inc. v. Intel Corp.*,
   227 Ill. 2d 45, 879 N.E.2d 910 (2007) ...........................................................29

20

21
*In re Bausch & Lomb, Inc. Contact Lens Solution Products Liability Litigation*, MDL No. 1785, C/A No. 2:06-MN-77777, 2007 WL 3046682
   (D.S.C. Oct. 11, 2007).............................................................................15, 25

22

23
*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) .........................5, 16

24
*Bertucelli v. Carreras*,
   467 F.2d 214 (9th Cir. 1972) .........................................................................14

25

26
*Bly-Magee v. California*,
   236 F.3d 1014 (9th Cir. 2001) .......................................................................18

27
*Bridge v. Phoenix Bond & Indemnity Co.*,
   128 S. Ct. 2131, 170 L. Ed. 2d 1012 (2008)...................................................10

28

DEFENDANT AMGEN INC.'S MOTION TO DISMISS

*In re Bridgestone/Firestone, Inc. Tires Products Liability Litigation*,
288 F.3d 1012 (7th Cir. 2002) ................................................. 15, 24

*Buckman Co. v. Plaintiffs' Legal Committee*,
531 U.S. 341, 121 S. Ct. 1012, 148 L. Ed. 2d 854 (2001) ........................... 4, 7

*Camp v. Pacific Financial Group*,
956 F. Supp. 1541 (C.D. Cal. 1997) ........................................ 7, 19, 20

*Cattie v. Wal-Mart Stores, Inc.*,
504 F. Supp. 2d 939 (S.D. Cal. 2007) .......................................... 29

*Central States, Southeast & Southwest Areas Health & Welfare Fund v.
Neurobehavioral Associates, P.A.*,
53 F.3d 172 (7th Cir. 1995) .................................................... 21

*Cleghorn v. Blue Shield of California*,
408 F.3d 1222 (9th Cir. 2005) .................................................. 21

*Clubcom, Inc. v. Captive Media, Inc.*,
No. 02:07-cv-1462, 2009 WL 249446 (W.D. Pa. Jan. 31, 2009) .................... 28

*Cohen v. Wedbush, Noble, Cooke, Inc.*,
841 F.2d 282 (9th Cir. 1988) .................................................... 8

*Congress of California Seniors v. Catholic Healthcare West*,
87 Cal. App. 4th 491, 104 Cal. Rptr. 2d 655 (2001) ............................... 22

*Conte Brothers Automobile, Inc. v. Quaker State-Slick 50, Inc.*,
992 F. Supp. 709 (D.N.J. 1998), *aff'd*, 165 F.3d 221 (3d Cir. 1998) .............. 26

*Davis v. SmithKline Beecham Clinical Laboratories, Inc.*,
993 F. Supp. 897 (E.D. Pa. 1998) .............................................. 21

*District 1199P Health & Welfare Plan v. Janssen, L.P.*,
No. 06-3044, 2008 WL 5413105 (D.N.J. Dec. 23, 2008) .................... 10, 12, 15

*Durant v. Servicemaster Co.*, 208 F.R.D. 228 (E.D. Mich. 2002), *vacated on
other grounds*, 109 F. App'x 27 (6th Cir. 2004) .............................. 26

*Duronio v. Merck & Co.*,
No. 267003, 2006 WL 1628516 (Mich. Ct. App. June 13, 2006) .................. 25

*In re Epogen & Aranesp Off-Label Marketing & Sales Practices Litigation*,
590 F. Supp. 2d 1282 (C.D. Cal. 2008) ............................. 2, 3, 4, 5, 6, 10, 20

*Epstein v. Washington Energy Co.*,
83 F.3d 1136 (9th Cir. 1996) ................................................... 5

*In re Ford Motor Co. Ignition Switch Products Liability Litigation*,
174 F.R.D. 332 (D.N.J. 1997) ................................................. 27

*Garlic v. Food & Drug Admin.*,
783 F. Supp. 4 (D.D.C. 1992) ................................................... 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Gartin v. S & M Nutec LLC*,
    245 F.R.D. 429 (C.D. Cal. 2007) ...................................................................25

*Geisinger Medical Center v. Gough*,
    160 F.R.D. 467 (M.D. Pa. 1994).....................................................................14

*German Free State of Bavaria v. Toyobo Co.*,
    480 F. Supp. 2d 958 (W.D. Mich. 2007).........................................................27

*Gonzalez v. Proctor & Gamble Co.*,
    247 F.R.D. 616 (S.D. Cal. 2007).....................................................................29

*In re Grand Theft Auto Video Game Consumer Litigation*,
    251 F.R.D. 139 (S.D.N.Y. 2008) ....................................................................28

*In re Graphics Processing Units Antitrust Litigation*,
    527 F. Supp. 2d 1011 (N.D. Cal. 2007).....................................................23, 28

*In re Guidant Corp. Implantable Defibrillators Products Liability Litigation*,
    484 F. Supp. 2d 973 (D. Minn. 2007) .............................................................13

*Heindel v. Pfizer, Inc.*,
    381 F. Supp. 2d 364 (D.N.J. 2004) .....................................................11, 25, 26

*Holmes v. Securities Investor Protection Corp.*,
    503 U.S. 258, 112 S. Ct. 1311, 117 L. Ed. 2d 532 (1992) .........................10, 13

*Impress Communications v. Unumprovident Corp.*,
    335 F. Supp. 2d 1053 (C.D. Cal. 2003)...........................................................14

*International Brotherhood of Teamsters, Local 734 Health & Welfare Trust
    Fund v. Philip Morris, Inc.*,
    196 F.3d 818 (7th Cir. 1999) ..........................................................................15

*International Union of Operating Engineers Local No. 68 Welfare Fund v.
    Merck & Co.*, 192 N.J. 372, 929 A.2d 1076 (2007)..........................................13

*Ironworkers Local Union No. 68 & Participating Employers Health &
    Welfare Funds v. Astrazeneca Pharmaceuticals L.P.*,
    585 F. Supp. 2d 1339 (M.D. Fla. 2008) ............................ 10, 11, 12, 13, 25, 29

*Kussy v. Home Depot U.S.A. Inc.*,
    No. 06-12899, 2006 WL 3447146 (E.D. Mich. Nov. 28, 2006) .....................27

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*,
    191 F.3d 229 (2d Cir. 1999)............................................................................14

*Laster v. T-Mobile USA, Inc.*,
    407 F. Supp. 2d 1181 (S.D. Cal. 2005), *aff'd*, 252 F. App'x 777
    (9th Cir. 2007) ...............................................................................................29

*Lewallen v. Medtronic USA, Inc.*,
    No. C 01-20395, 2002 WL 31300899 (N.D. Cal. Aug. 28, 2002) ..................23

*Longmont United Hospital v. Saint Barnabas Corp.*,
No. 06-2802, 2007 U.S. Dist. LEXIS 48187 (D.N.J. June 22, 2007), *aff'd*,
2009 U.S. App. LEXIS 63 (3d Cir. Jan. 5, 2009) ....................................13, 14

*Love v. Mail on Sunday*,
No. CV057798, 2006 WL 4046180 (C.D. Cal. Aug. 15, 2006).......................28

*Maio v. Aetna, Inc.*,
221 F.3d 472 (3d Cir. 2000)............................................................................15

*Marin General Hospital v. Modesto & Empire Traction Co.*,
No. C 07-1027, 2007 WL 1394155 (N.D. Cal. May 9, 2007).........................20

*McLaughlin v. America Tobacco Co.*,
522 F.3d 215 (2d Cir. 2008)............................................................................11

*Meinhold v. Sprint Spectrum, L.P.*,
No. CV S-07-00456, 2007 U.S. Dist. LEXIS 35806 (E.D. Cal. May 16,
2007) ...............................................................................................................30

*Mendelovitz v. Vosicky*,
40 F.3d 182 (7th Cir. 1994) .............................................................................11

*Meridian Project System, Inc. v. Hardin Construction Co.*,
404 F. Supp. 2d 1214 (E.D. Cal. 2005) .........................................22, 23, 24, 30

*Moll v. US Life Title Insurance Co. of N.Y.*,
654 F. Supp. 1012 (S.D.N.Y. 1987)................................................................17

*Montesano v. Seafirst Commercial Corp.*,
818 F.2d 423 (5th Cir. 1987) ..........................................................................16

*N.J. Citizen Action v. Schering-Plough Corp.*,
367 N.J. Super. 8, 842 A.2d 174 (App. Div. 2003) ...................................11, 27

*In re National Western Life Insurance Deferred Annuities Litigation*,
467 F. Supp. 2d 1071 (S.D. Cal. 2006) ...........................................................23

*Neitzke v. Williams*,
490 U.S. 319, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989) ...............................5

*O & G Carriers, Inc. v. Smith*,
799 F. Supp. 1528 (S.D.N.Y. 1992).........................................................17, 19

*Odom v. Microsoft Corp.*,
486 F.3d 541 (9th Cir. 2007), *cert. denied*, 128 S. Ct. 464, 169 L. Ed. 2d
325 (2007) .............................................................................................17, 18, 20

*Oliveira v. Amoco Oil Co.*,
201 Ill. 2d 134, 776 N.E.2d 151 (2002) ..........................................................27

*Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris,
Inc.*,
185 F.3d 957 (9th Cir. 1999) .....................................................................10, 11

v

*Paulo v. Bepex Corp.*,
   792 F.2d 894 (9th Cir. 1986) ...................................................................28

*In re Paxil Litigation*, 212 F.R.D. 539 (C.D. Cal. 2003) ......................................23

*Pennsylvania Employees Benefit Trust Fund v. Zeneca, Inc.*,
   499 F.3d 239 (3rd Cir. 2007), *pet. for cert. filed*, 76 U.S.L.W. 3349 (2007)…7, 9

*Peralta v. Hispanic Business, Inc.*,
   419 F.3d 1064 (9th Cir. 2005) ..................................................................21

*Perry v. American Tobacco Co.*,
   324 F.3d 845 (6th Cir. 2003) ...................................................................27

*Pressalite Corp. v. Matsushita Electric Corp. of America*,
   No. 02 C 7086, 2003 U.S. Dist. LEXIS 5600 (N.D. Ill. Apr. 3, 2003) ...........27

*Prohias v. Pfizer, Inc.*,
   490 F. Supp. 2d 1228 (S.D. Fla. 2007)......................................................9, 25

*In re Rexplore, Inc. Securities Litigation*,
   671 F. Supp. 679 (N.D. Cal. 1987) ...........................................................19

*In re Rezulin Products Liability Litigation*,
   390 F. Supp. 2d 319 (S.D.N.Y. 2005)......................................................13, 26

*Rivera v. Wyeth-Ayerst Laboratories*,
   283 F.3d 315 (5th Cir. 2002) ...................................................................15

*Rolo v. City Investing Co. Liquidating Trust*,
   155 F.3d 644 (3d Cir. 1998).....................................................................18

*Schreiber Distributing Co. v. Serv-Well Furniture Co.*,
   806 F.2d 1393 (9th Cir. 1986) ..................................................................19

*Seibels Bruce Group, Inc. v. R.J. Reynolds Tobacco Co.*,
   No. C-99-0593, 1999 U.S. Dist. LEXIS 15320 (N.D. Cal. Sept. 21, 1999) .....15

*Sheet Metal Workers National Health Fund v. Amgen, Inc.*,
   No. CV 07-5620 PSG (AGRx), slip op. (C.D. Cal. Feb. 20, 2008) .......2, 10, 20

*Sinclair v. Merck & Co.*,
   195 N.J. 51, 948 A.2d 587 (2008).............................................................26

*In re SmithKline Beecham Clinical Laboratories, Inc. Laboratory Test Billing
   Practices Litigation*, 108 F. Supp. 2d 84 (D. Conn. 1999) ......................16, 21

*Sprague Farms, Inc. v. Providian Corp.*,
   929 F. Supp. 1125 (C.D. Ill. 1996)............................................................15

*In re Stac Electronics Securities Litigation*,
   89 F.3d 1399 (9th Cir. 1996) ............................................................6, 18, 19

*State Farm Mutual Auto Insurance Co. v. Campbell.*,
   538 U.S. 408, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003) ...........................25

*Stepan Co. v. Winter Panel Corp.*,
  948 F. Supp. 802 (N.D. Ill. 1996) .................................................................27

*Stewart v. Wachowski*,
  No. CV 03-2873, 2004 WL 2980783 (C.D. Cal. Sept. 28, 2004) ....................19

*Sullivan v. Oracle Corp.*,
  547 F.3d 1177 (9th Cir. 2008) ........................................................................23

*Sybersound Records, Inc. v. UAV Corp.*,
  517 F.3d 1137 (9th Cir. 2008) ........................................................................14

*Tate v. Pacific Gas & Electric Co.*,
  230 F. Supp. 2d 1072 (N.D. Cal. 2002).........................................................20

*Taylor v. Nelson*,
  No. Civ. A. 02-6558, 2006 WL 266052 (E.D. Pa. Jan. 31, 2006)...................26

*Tidwell v. Thor Industries, Inc.*,
  No. 05-CV-2088-L, 2007 U.S. Dist. LEXIS 21819 (S.D. Cal. Mar. 26,
  2007) .................................................................................................................24

*U.S. Concord, Inc. v. Harris Graphics Corp.*,
  757 F. Supp. 1053 (N.D. Cal. 1991) ...............................................................19

*United Food & Commercial Workers Central Pennsylvania & Regional
  Health & Welfare Fund v. Amgen, Inc.*,
  No. CV 07-3623, 2007 WL 4144676 (C.D. Cal. Nov. 13, 2007) ..............24, 30

*United States ex rel. Hess v. Sanofi-Synthelabo, Inc.*,
  No. 4:05-CV-570, 2006 WL 1064127 (E.D. Mo. Apr. 21, 2006)....................20

*United States ex rel. McDermott v. Genentech, Inc.*,
  No. 05-147-P-C, 2006 WL 3741920 (D. Me. Dec. 14, 2006)..........................20

*United States ex rel. Rost v. Pfizer, Inc.*,
  507 F.3d 720 (1st Cir. 2007).............................................................................18

*United States ex rel. West v. Ortho-McNeil Pharmaceutical, Inc.*,
  No. 03 C 8239, 2007 WL 2091185 (N.D. Ill. July 20, 2007) .........................20

*United States v. Turkette*,
  452 U.S. 576, 101 S. Ct. 2524, 69 L. Ed. 2d 246 (1981) ................................16

*Van Slyke v. Capital One Bank*,
  No. C 07-00671, 2007 WL 3343943 (N.D. Cal. Nov. 7, 2007)......................22

*Vestal v. Shiley Inc.*,
  No. SACV96-1205, 1997 WL 910373 (C.D. Cal. Nov. 17, 1997) ............28, 29

*Walker v. Sunrise Pontiac-GMC Truck, Inc.*,
  249 S.W.3d 301 (Tenn. 2008)..........................................................................26

*Wang & Wang LLP v. Banco Do Brasil, S.A.*,
  No. Civ. S-06-00761, 2007 WL 915232 (E.D. Cal. Mar. 26, 2007) ...............30

*Washington Legal Foundation v. Henney*,
   202 F.3d 331 (D.C. Cir. 2000) ................................................................. 4

*Washington Mutual Bank, FA v. Superior Court*,
   24 Cal. 4th 906, 103 Cal. Rptr. 2d 320 (2001) ...................................... 24

*Weinberg v. Sun Co.*,
   565 Pa. 612, 777 A.2d 442 (2001) ..................................................... 26, 27

*Williams v. Purdue Pharma Co.*,
   297 F. Supp. 2d 171 (D.D.C. 2003) ........................................................ 15

*Windsor Card Shops, Inc. v. Hallmark Cards, Inc.*,
   957 F. Supp. 562 (D.N.J. 1997) .............................................................. 26

*Wyeth v. Levine*,
   --- S. Ct. ----, 2009 WL 529172 (Mar. 4, 2009) ...................................... 2

*Zinser v. Accufix Research Institute, Inc.*,
   253 F.3d 1180 (9th Cir.), *amended by* 273 F.3d 1266 (9th Cir. 2001) ....... 24, 25

**STATUTES**

18 U.S.C. § 1964(c) ................................................................................. 10

21 U.S.C. § 337(a) ................................................................................ 5, 6

29 U.S.C. § 1001 *et seq.* ......................................................................... 20

29 U.S.C. § 1002(1), (3) ........................................................................ 20

29 U.S.C. § 1144(a) ............................................................................... 20

21 C.F.R. § 10.25 (2009) .......................................................................... 7

21 C.F.R. § 10.30 (2009) .......................................................................... 7

Cal. Bus. & Prof. Code § 17200 *et seq.* ................................................ 22

Cal. Bus. & Prof. Code § 17203 (West 2008) ....................................... 27

Cal. Bus. & Prof. Code § 17204 (West 2008) ....................................... 29

Cal. Bus. & Prof. Code § 17500 *et seq.* ................................................ 22

Cal. Bus. & Prof. Code § 17535 (West 2008). ...................................... 29

815 Ill. Comp. Stat. 505/10a(a), (c) (2008) .......................................... 27

Mich. Comp. Laws Ann. § 445.904(1)(a) (West 2008) ......................... 25

Mich. Comp. Laws Ann. § 445.911(3) (West 2008) ............................. 26

73 Pa. Cons. Stat. Ann. § 201-9.2(a) (West 2008) ................................ 26

Tenn. Code Ann. § 47-18-109(a), (e) (West 2002)................................................27

1     Defendant Amgen Inc. respectfully submits this memorandum of points and

2 authorities in support of its motion to dismiss Plaintiffs' Amended Consolidated

3 Class Action Complaint (the "Amended Complaint").[1]

4                **PRELIMINARY STATEMENT**

5     Plaintiffs' Amended Complaint is merely *another* superficial rehash of their

6 impermissible and otherwise fatally deficient RICO and California statutory claims.

7 Plaintiffs (or the "Funds") have heeded neither this Court's unequivocal holding that

8 they may not base their claims on allegations that Amgen engaged in off-label

9 promotion, nor the Court's direction that any amended pleading must allege, with

10 particularity, specific false or misleading representations.  To the contrary, with the

11 exception of abandoning the allegations regarding a "Kidney Dialysis Enterprise"

12 and claims against DaVita and Fresenius, the Amended Complaint continues to

13 assert virtually *every* substantive allegation of their dismissed Consolidated

14 Complaint.  At the same time, the Amended Complaint fails to present any

15 substantive additions to the Funds' prior iterations of their claims.  It therefore

16 remains an improper attempt to privately enforce the Food, Drug, and Cosmetic Act

17 ("FDCA") through RICO and state consumer protection claims, and should be

18 dismissed for the same reasons as its predecessors – this time, with prejudice.

19     Of the 171 paragraphs in the Amended Complaint, over three-quarters are

20 substantially identical to paragraphs in the Consolidated Complaint.  *See* Blackline

21 Comparison of Am. Compl. to Cons. Compl., attached as Exhibit A.[2]  The few edits

22 the Funds did make are almost exclusively semantic and do nothing to cure the

23 defects this Court has already found fatal.  For example, the Funds have merely

24 substituted "unlawfully" with "falsely," swapped "unsafe and unproven" for "off-

25

26 [1]  All references to the Amended Complaint are to the "Corrected" version filed February 24, 2009 [D.E. 54].  The Court permitted Plaintiffs to file a Consolidated Complaint for pre-trial proceedings only.  *See* 6/2/08 Tr. at 10.  The Amended

27 Complaint is United Food's third amended pleading and the other Plaintiffs' second.

28 [2]  All exhibits are attached to the accompanying Declaration of Mark S. Cheffo.

DEFENDANT AMGEN INC.'S MOTION TO DISMIS

1  label," and deleted the "Regulatory Framework" section of their prior pleading.

2  Each of their claims, however, remains predicated on allegations that Amgen

3  engaged in off-label promotion of its anemia medicines and that, as a result, doctors

4  wrote, and the Funds purportedly paid for, unnecessary off-label prescriptions.  This

5  Court has already twice determined that such claims are not actionable and that

6  plaintiffs may not "shoehorn allegations that Defendants engaged in off-label

7  promotion in violation of the FDCA into RICO and state consumer fraud causes of

8  action."  *In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*, 590 F.

9  Supp. 2d 1282, 1290 (C.D. Cal. 2008) (Gutierrez, J.) ("MDL Order"); *see also Sheet*

10  *Metal Workers Nat'l Health Fund v. Amgen, Inc.*, No. CV 07-5620 PSG (AGRx),

11  slip op. at 15 (C.D. Cal. Feb. 20, 2008) (Gutierrez, J.) ("SMW Order").[3]  The Funds

12  have not added any allegations of fraud, much less attempted to plead any of their

13  over eighteen-month-old allegations with specificity.  Because "the main thrust of

14  their allegations" continues to be that "[Amgen] illegally promoted EPO for off-label

15  uses, *not* that [Amgen] promoted EPO through false, misleading, or otherwise

16  _____

17  [3]   The Supreme Court's recent decision in *Wyeth v. Levine*, --- S. Ct. ----, 2009 WL
18  529172 (Mar. 4, 2009), finding that federal law did not preempt a failure-to-warn
    claim in that personal injury case, does not impact this Court's rulings that the
19  Funds' "claims constitute an impermissible attempt to privately enforce the FDCA
    and FDA regulations."  SMW Order at 15; *see also* MDL Order at 1287-92.  *Levine*
20  was a personal injury action challenging, through common law causes of action, the
    adequacy of warnings in the labeling for Phenergan, an antinausea drug, and raising
21  the question of Wyeth's ability to strengthen those warnings under a specific FDA
    regulation.  *See Levine*, 2009 WL 529172, at *2, *7.  This case, by contrast, does not
22  involve common law personal injury claims or the adequacy of Amgen's labeling for
    Epogen® and Aranesp®.  Rather, as this Court has found, the heart of the Funds'
23  RICO and consumer fraud claims are allegations of off-label promotion – conduct
    that is actionable solely under the FDCA and FDA regulations and subject to the
24  statutory requirement that any "'proceedings for the enforcement, or to restrain
    violations, of [the FDCA] shall be by and in the name of the United States.'"  MDL
25  Order at 1287 (quoting 21 U.S.C. § 337(a)); *see also id.* at 1289 ("[Plaintiffs']
    allegations of off-label promotion are, in essence, misbranding claims that should be
26  reviewed by the FDA.").  In sum, the Supreme Court in *Levine* did not address the
    question that this Court decided and that the Funds' Amended Complaint puts before
27  the Court once again – whether their claims are barred by Congress's express
    proscription of a private right of action to enforce violations of statutes and
28  regulations governing prescription drug advertising and promotion in general, and
    off-label promotion in particular.

DEFENDANT AMGEN INC.'S MOTION TO DISMIS

1  fraudulent statements," MDL Order at 1289, their claims cannot survive.

2        The Amended Complaint also fails for several additional, independent reasons.

3  First, as recent authority dismissing claims just like the Funds' confirms, the Funds'

4  RICO and state law claims allege neither a cognizable injury nor the requisite direct

5  causal nexus between their purported injury and the conduct they allege.  Second, the

6  Funds' claims fail because they have not pled fraud with the specificity required by

7  Rule 9(b).  Third, the Funds' state law claims are expressly preempted by the

8  Employee Retirement Income Security Act ("ERISA") because they relate to ERISA

9  plans.  Finally, the Funds' claims fail under California's consumer protection laws

10  because those statutes do not extend to these out-of-state Plaintiffs, and even if they

11  did, the Funds have not pled fundamental elements of those claims.  The Amended

12  Complaint should be dismissed with prejudice in its entirety.

13                        **STATEMENT OF FACTS**

14        The Funds are seven out-of-state health plans from Tennessee, Pennsylvania,

15  Illinois, New Jersey, and Michigan.  *See* Am. Compl. ¶¶ 15-21.  They bring this

16  putative class action on behalf of a nationwide class of "[a]ll persons or entities that

17  paid for EPO [Epogen® or Aranesp®, or ESAs] when EPO was administered for

18  anemia of cancer and/or heart failure and/or for treatment of cancer (the 'Fraudulent

19  Marketing Class'); and [a]ll persons or entities that paid for EPO when EPO was

20  administered through intravenous administration and/or at dosages that achieved a

21  hemoglobin of 13g/dL and above (the 'Kidney Dialysis Subclass')."  *Id.* ¶ 141.

22        The Funds' central allegation remains that "Amgen engaged in a massive

23  scheme to defraud Plaintiffs and the Class . . . by falsely promoting the use of

24  [Epogen® and Aranesp®] for unsafe purposes and at dangerous dosages."  *Id.* ¶ 3.

25  Specifically, the Funds allege that Amgen, through the "False Marketing Enterprise"

26  ("FME"), promoted its anemia medications for the *off-label uses* of "anemia of

27  cancer and/or heart failure and/or for treatment of cancer."  *Id.* ¶ 141; *see also id.* ¶ 5.

28  Additionally, the Funds allege that Amgen "promoted [the] intravenous

3

1 administration of EPO to kidney dialysis patients, even though this route of
2 administration had the . . . effect of achieving hemoglobin levels of 13 g/dL or above
3 – an unsafe use of these drugs." *Id.* ¶ 111.  However, the FDA-approved labels for
4 Epogen® and Aranesp® not only expressly allow but *recommend* intravenous (or
5 "IV") administration in patients on dialysis.  *See* MDL Order at 1285.

6 　　　　The Amended Complaint does not allege that Amgen made any representation
7 to any of the Funds, much less any specific misrepresentation that was false,
8 misleading, or contained a material omission.  Rather, the Funds assert that Amgen
9 promoted off-label or "unproven" uses through press releases discussing clinical trial
10 results, continuing medical education ("CME") presentations, and by giving
11 charitable contributions to third-party non-profits that provided educational materials
12 and other information to doctors.  *See, e.g.*, Am. Compl. ¶¶ 39-70.  Although the
13 Funds allege they have "paid hundreds of millions, if not billions, of dollars in
14 claims for EPO prescribed for unsafe and unproven uses" (*id.* ¶ 134), they do not
15 identify a single doctor who received any off-label promotion or misrepresentation
16 from Amgen, let alone one who prescribed Epogen® or Aranesp® to a Fund member
17 as a result.  Indeed, they have not identified, or alleged they have identified, any off-
18 label or unsafe prescription for which they paid some or all of the cost.  Nor have
19 they alleged that either medication harmed, or was ineffective for, any member.

20 　　　　Off-label use, as distinguished from off-label promotion, is *not* unlawful.  The
21 FDA recognizes the independent and informed medical judgment of physicians and
22 permits them to prescribe medications "regardless of whether the drug has been
23 approved for that use by the FDA."  *Wash. Legal Found. v. Henney*, 202 F.3d 331,
24 333 (D.C. Cir. 2000); *see also Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S.
25 341, 350, 121 S. Ct. 1012, 1018, 148 L. Ed. 2d 854, 862 (2001).  Congress and the
26 FDA have adopted detailed statutory and regulatory provisions to address
27 prescription drug marketing and promotion, including the dissemination of
28 information about off-label uses.  *See* MDL Order at 1287-88.  The right to enforce

4

DEFENDANT AMGEN INC.'S MOTION TO DISMIS

1    these laws lies exclusively with the FDA. *See id.*; 21 U.S.C. § 337(a).

2                     **STANDARD FOR DISMISSAL**

3         A motion to dismiss under Rule 12(b)(6) should be granted where a plaintiff is

4    unable to delineate "enough facts to state a claim to relief that is plausible on its

5    face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L.

6    Ed. 2d 929, 949 (2007).  "[A] formulaic recitation of the elements of a cause of

7    action will not do.  Factual allegations must be enough to raise a right to relief above

8    the speculative level." *Id.* at 555 (citations omitted); *see also Epstein v. Wash.*

9    *Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law

10    and unwarranted inferences are insufficient to defeat a motion to dismiss for failure

11    to state a claim.").  A district court "'retain[s] the power to insist upon some

12    specificity in pleading before allowing a potentially massive factual controversy to

13    proceed.'" *Twombly*, 550 U.S. at 558 (citation omitted).  Further, "[i]t is not . . .

14    proper to assume that [plaintiffs] can prove facts that [they have] not alleged." *Assoc.*

15    *Gen. Contractors, Inc. v. Carpenters*, 459 U.S. 519, 526 (1983).  Where, as here, a

16    complaint does not contain direct or inferential allegations with respect to every

17    necessary element, it must be dismissed.  *See Neitzke v. Williams*, 490 U.S. 319, 327,

18    109 S. Ct. 1827, 1832, 104 L. Ed. 2d 338, 348 (1989).

19                        **ARGUMENT**

20 **I.**     **ALL OF THE FUNDS' CLAIMS ARE BARRED BECAUSE THE FDCA PROSCRIBES A PRIVATE RIGHT OF ACTION**

21

22         This Court previously dismissed the Funds' claims because they were "an

23    impermissible attempt to bring a private suit for violations of the FDCA."  MDL

24    Order at 1292.  The claims in the Amended Complaint are no different.  Because the

25    Funds have utterly failed to allege, with the required specificity, that Amgen engaged

26    in "deceptive advertising that fraudulently misrepresented the safety of off-label uses

27    of EPO," *id.*, their claims must be dismissed with prejudice.

28         This Court has held that the Funds should not be permitted to do through

RICO or state law claims what they are unable to do under the FDCA – bring a

1  private action for alleged off-label promotion.  *See* MDL Order at 1290-92; 21 U.S.C.

2  § 337(a).  Although the Funds have removed references to the FDCA and FDA

3  regulations from the Amended Complaint, and scattered conclusory modifiers like

4  "falsely" and "deceptive" throughout their allegations, their claims remain an attempt

5  to privately enforce those provisions.  *See, e.g.*, Am. Compl. ¶ 5 (alleging Amgen

6  sought to "increase its profits by falsely promoting EPO for unsafe off-label uses");

7  *id.* ¶ 39 (alleging Amgen engaged in a scheme to increase sales of ESAs through

8  "deceptive promotion of unsubstantiated and unsafe off-label uses").[4]  The Funds

9  also continue to seek to enjoin Amgen's alleged promotional activities.  *Id.* at p. 56.

10       This Court has already rejected the Funds' assumption "that off-label

11  promotion is inherently fraudulent."  MDL Order at 1289.  The Funds, however,

12  have disregarded the Court's opinion and direction and simply replaced references to

13  "off-label" or "unlawful" with words like "unproven," "unsafe," "false," or

14  "deceptive," without any substantiation for, much less specific allegations to support,

15  those substituted terms.  *See* Exh. A ¶¶ 3, 6, 12, 39, 47, 61, 63-64, 68-69, 71, 93, 96,

16  100, 102, 104, 126, 134, 139, 153, 156.  The Funds' allegations of promotion for

17  "unproven" uses are nothing more than a proxy for allegations of off-label use, as the

18  only standard of "proof" to which the Funds appeal is FDA approval.  *See, e.g.*, Am.

19  Compl. ¶ 64 ("EPO has not been proven to be effective in the treatment of anemia in

20  MDS patients as the FDA has not approved it for such use.").  Similarly, the

21  Amended Complaint's conclusory allegations of promotion for "unsafe" uses do not

22  plead or even imply fraud.  The Funds do not allege that any statement or conduct by

23  Amgen represented ESAs as safer for a given use than the existing clinical evidence

24  warranted.  *See In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1404 (9th Cir. 1996)

25

---

26  [4]  *See also* Am. Compl. ¶ 54 (alleging that the FME provided materials to doctors "which promoted off-label uses of EPO," and that NAAC and CancerCare "play a pivotal role in the off-label marketing of EPO by . . . endorsing off-label uses"); *id.*

27  ¶ 68 (alleging Amgen financed CMEs "where off-label uses of EPO were deceptively promoted"); *id.* ¶ 77 (alleging Amgen "continued its efforts to stimulate

28  off-label use of its drugs by deceptively touting positive preliminary study results").

---

6

1  (noting that to satisfy Rule 9(b), the plaintiff must explain why the statement or

2  omission was false or misleading when made).

3      Holding that the Funds may not attempt to enforce the FDCA's misbranding

4  provisions by private action, this Court has recognized that "'the right to enforce the

5  provisions of the FDCA lies exclusively within the federal government's domain.'"

6  MDL Order at 1287 (quoting *Summit Tech., Inc. v. High-Line Med. Instruments Co.*,

7  922 F. Supp. 299, 305 (C.D. Cal. 1996)); *accord Penn. Employees Ben. Trust Fund v.*

8  *Zeneca Inc.*, 499 F.3d 239, 251-52 (3rd Cir. 2007), *pet. for cert. filed*, 76 U.S.C.W.

9  3349 (2007).[5]  Because the Consolidated Complaint, which was premised entirely on

10 allegations of off-label promotion, was nothing more than an attempt to enforce the

11 FDCA's misbranding provisions, this Court left the Funds room to re-plead only if

12 they could allege statements that were "literally false, misleading, or omitted

13 material facts," and with the specificity required by Rule 9.  MDL Order at 1291-92.

14     The Funds, however, do not identify any statements by Amgen that they

15 contend were literally false or misleading, much less any statement that they, or even

16 any prescribing doctor, ever relied upon, nor do they plead any such allegation with

17 the necessary specificity.  *See Camp v. Pac. Fin. Group*, 956 F. Supp. 1541, 1551

18 (C.D. Cal. 1997) ("[T]he plaintiff must set forth the circumstances indicating

19 falseness.").  Instead, the Funds continue to point only to a series of press releases

20 and letters to healthcare professionals in which Amgen reported the preliminary

21 _____

22 [5]   Although the FDCA does not provide a private right of action, FDA regulations
23 permit individuals or organizations, like the Funds, to petition the Agency to take
   action and pursue judicial review of any response.  *See* 21 C.F.R. §§ 10.25, 10.30
24 (2009); *Buckman*, 531 U.S. at 349 (explaining that "citizens may report wrongdoing
   and petition the [FDA] to take action"); *Ass'n of Am. Physicians & Surgeons, Inc. v.*
25 *Food & Drug Admin.*, 539 F. Supp. 2d 4, 21 (D.D.C. 2008) ("In fact, the FDA's
   regulations . . . *require* that [such] a request . . . 'first be the subject of a final
26 administrative decision . . . before any legal action is filed in a court complaining of
   the action or failure to act.'") (quoting 21 C.F.R. § 10.45(b)); *see also Garlic v. Food*
27 *& Drug Admin.*, 783 F. Supp. 4, 5 (D.D.C. 1992) ("Allowing 'interested parties' to
   bypass the administrative remedies [provided by FDA regulations] would undermine
28 the entire regulatory process.").  The Funds have never alleged that they have
   pursued, much less exhausted, this administrative procedure.

7

1  findings of clinical trials concerning off-label use. *See* Am. Compl. ¶¶ 40, 44-45,

2  47-53, 78, 116.  The Funds attempt to insinuate impropriety in Amgen's disclosure

3  of medical research, but do not allege that any fact reported in these press releases

4  was false.  Similarly, while the Funds repeatedly append the labels "deceptively,"

5  and "false and misleading" to allegations about certain promotional activities, the

6  only support offered for their accusations is the fact that the uses were off-label.

7         The Funds' FME claims involving Amgen's alleged association with NAAC

8  and CancerCare and alleged participation in CME programs similarly fail to state

9  any actionable fraud.  *See id.* ¶¶ 55-70.  The majority of the statements allegedly

10  made are simply reports regarding off-label use that the Funds do not claim were

11  fraudulent.  *See, e.g., id.* ¶ 57 (alleging that a NAAC brochure "repeatedly points to

12  studies suggesting that use of EPO for treatment of anemia has beneficial effects").

13  For example, the Funds allege that Amgen "deceptively promoted" the use of its

14  anemia medicines in patients with MDS-induced anemia (an unapproved or off-label

15  use) through CME materials stating that such treatment "resulted in patient

16  improvement" or "should be considered."  *Id.* at ¶¶ 68-70.  Here and elsewhere

17  throughout their pleading, however, the Funds have alleged nothing other than true

18  statements regarding potential off-label uses of ESAs.  The Funds have not, and

19  cannot, allege that Amgen misrepresented this or any other unapproved use as FDA-

20  approved, and the medications' labels always clearly indicated those uses approved

21  by the FDA.  These allegations simply reinforce the conclusion that the Amended

22  Complaint remains an attempt to enforce the misbranding provisions of the FDCA.

23         The Funds' allegations of omissions are similarly deficient.  They do not

24  provide, as required by this Court, any basis for the inference that any alleged

25  omissions were material.  Moreover, "[i]n order for a mere omission to constitute

26  actionable fraud, a plaintiff must first demonstrate that the defendant had a duty to

27  disclose the fact at issue."  *Cohen v. Wedbush, Noble, Cooke, Inc.*, 841 F.2d 282, 287

28  (9th Cir. 1988) (citations omitted).  The Funds do not allege that Amgen had any

1  duty to disclose with respect to any purported omission, much less one to the Funds.

2       The Funds' state law and RICO claims based on alleged promotion of the IV

3  administration of ESAs, *see, e.g.*, Am. Compl. ¶¶ 105, 111, are barred for the

4  additional reason that IV administration is expressly permitted, and indeed,

5  *recommended* (over subcutaneous administration), by the FDA-approved Epogen®

6  and Aranesp® labels for patients on dialysis. *See Prohias v. Pfizer, Inc.*, 490 F.

7  Supp. 2d 1228, 1234-35 (S.D. Fla. 2007) (dismissing, as both preempted and not

8  misleading as a matter of law, claims challenging promotion of Lipitor that was

9  consistent with its approved labeling); *see also Zeneca*, 499 F.3d at 251 (affirming

10 dismissal of consumer fraud claims involving prescription drug advertising,

11 explaining: "[T]he purpose of protecting prescription drug users in the FDCA would

12 be frustrated if states were allowed to interpose consumer fraud laws that permitted

13 plaintiffs to question the veracity of statements approved by the FDA.").

14      When the statements about IV use on which the Funds rely were made – and

15 continuing to today – Epogen's label stated and states that "***In patients on***

16 ***hemodialysis, the IV route is recommended*** (see WARNINGS: Pure Red Cell

17 Aplasia)." Exh. B, October 2005 Epogen Label, at 23; Exh. C, August 2008 Epogen

18 Label, at 26.[6]  The label's warning section further states that cases of pure red cell

19 aplasia and severe anemia have been "reported predominantly in patients with

20 [chronic renal failure] receiving Epogen by subcutaneous administration."  Exh. B at

21 9; Exh. C at 13.  This is the very warning that the Funds attack.  *See* Am. Compl.

22 ¶ 112.  Thus, the Funds' claims would require a finding – that Amgen should *not*

23 have warned of the risks of subcutaneous administration or recommended IV use –

24 that directly contradicts the FDA's findings and approved directions to doctors.

25

26

27
_____
28 [6]  *See* MDL Order at 1286 (taking judicial notice of Epogen labels).

---
9

1  **II.     THE FUNDS' RICO CLAIMS FAIL FOR MULTIPLE REASONS**

2          The Funds' RICO claims remain nothing more than re-packaged state law

3  claims alleging unlawful promotion of Amgen's ESAs, which this Court has already

4  found are improper.  *See* MDL Order at 1290-92.  Their claims are also fatally

5  defective, and subject to dismissal, for the following additional, independent reasons.

6          **A.     The Funds Have Not Alleged Proximate Causation**

7          To have standing to bring a RICO claim, the Funds must plead that they were

8  "injured in [their] business or property *by reason of* a violation of section 1962" of

9  the statute.  18 U.S.C. § 1964(c) (emphasis added).  Although this Court previously

10 held that Plaintiff Sheet Metal Workers' claims adequately alleged causation under

11 RICO, *see* SMW Order at 8-9, Amgen respectfully submits that Supreme Court and

12 Ninth Circuit decisions, as well as recent decisions in directly analogous cases,

13 confirm that the Funds' RICO claims fail as a matter of law because they have not

14 alleged that Amgen's purported predicate violations – mail and wire fraud – were

15 both a "but for" cause *and* the proximate cause of their claimed injury.  *See Bridge v.*

16 *Phoenix Bond & Indem. Co.*, 128 S. Ct. 2131, 2142, 170 L. Ed. 2d 1012, 1025 (2008)

17 (affirming RICO's "direct injury" requirement, citing the "'demand for some direct

18 relation between the injury asserted and the injurious conduct alleged'" to "avoid . . .

19 the difficulties associated with attempting 'to ascertain the amount of a plaintiff's

20 damages attributable to the violation, as distinct from other, independent, factors'")

21 (quoting *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268-69 (1992)).[7]

22         The central component of the proximate cause analysis is the presence of a

23 *direct* injury.  *See Anza*, 547 U.S. at 460 ("There is no need to broaden the universe

24 _____

25 [7]   *Accord Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457-62, 126 S. Ct. 1991,
   1996-99, 164 L. Ed. 2d 720, 728-32 (2006); *Ass'n of Wash. Pub. Hosp. Dists. v.*
26 *Philip Morris Inc.*, 241 F.3d 696, 703-04 (9th Cir. 2001); *Oregon Laborers-*
   *Employers Health & Welfare Trust Fund v. Philip Morris Inc.*, 185 F.3d 957, 964
27 (9th Cir. 1999); *Ironworkers Local Union No. 68  v. Astrazeneca Pharms. L.P.*, 585
   F. Supp. 2d 1339, 1342-45 (M.D. Fla. 2008); *Dist. 1199P Health & Welfare Plan v.*
28 *Janssen, L.P.,* No. 06-3044, 2008 WL 5413105, at *9 (D.N.J. Dec. 23, 2008).

_____

10

DEFENDANT AMGEN INC.'S MOTION TO DISMIS

1  of actionable harms to permit RICO suits by parties who have been injured only

2  indirectly.").  To satisfy the direct injury requirement, a plaintiff must plead facts

3  establishing a direct relationship between the predicate RICO violation and a

4  plaintiff's purported damages.  *See Anza*, 547 U.S. at 457-58.  "'[W]hen factors other

5  than the defendant's fraud are an intervening direct cause of a plaintiff's injury, that

6  same injury cannot be said to have occurred by reason of the defendant's actions.'"

7  *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 226 (2d Cir. 2008) (citation

8  omitted).[8]  The Supreme Court has recognized that this remoteness inquiry is

9  properly conducted at the motion to dismiss stage.  *See Anza*, 547 U.S. at 458-61.

10      Any injury to the Funds resulting from Amgen's alleged "racketeering"

11  necessarily "require[d] actions and decisions by" numerous third parties – including

12  doctors in prescribing Epogen® or Aranesp® for off-label uses and pharmacy

13  benefit managers ("PBMs") and other outside decision-makers in including ESAs on

14  the Funds' formularies – "before coming into being." *Mendelovitz*, 40 F.3d at 185.

15  Such damages are too remote as a matter of law to establish RICO standing.  Indeed,

16  courts have recognized that the necessary presence of a prescribing doctor breaks the

17  causal nexus between an alleged marketing misrepresentation and a patient's

18  purchase and use of a medication, since doctors, as "learned intermediar[ies],"

19  exercise independent judgment in deciding "whether or not to prescribe a particular

20  medication." *N.J. Citizen Action v. Schering-Plough Corp*, 842 A.2d 174, 177-78 (N.

21  J. Super Ct. App. Div. 2003); *accord Ironworkers*, 585 F. Supp. 2d at 1344-45;

22  *Heindel v. Pfizer, Inc.*, 381 F. Supp. 2d 364, 384 (D.N.J. 2004).

23      Significantly, the Middle District of Florida recently dismissed a directly

24  analogous putative RICO class action involving third-party payor ("TPP") claims

25
_____

26  [8]   *Accord Oregon Laborers*, 185 F.3d at 965 ("'[T]he direct injury test can be seen as wisely limiting standing to sue to those situations where the chain of causation leading to damages is not complicated by the intervening agency of third

27  parties . . . .'") (citation omitted); *Mendelovitz v. Vosicky*, 40 F.3d 182, 185 (7th Cir. 1994) (holding that where alleged damages "require actions and decisions by third

28  parties before coming into being," there is no direct injury).

(including by the same Ironworker Funds in this action) for reimbursement of monies spent on the medicine Seroquel for failure to allege proximate causation. *See Ironworkers*, 585 F. Supp. 2d 1339. The court held that the prescribing doctor's role in the causal chain "raise[d] serious concerns regarding the ascertainment of damages" attributable to defendants' conduct, as opposed to other intervening acts:

> The key independent factor in this case stems from the fact that consumers may only obtain Seroquel through a prescription from a physician. Presumably, these physicians use their independent medical judgment to decide whether Seroquel is the best treatment for a given patient. This independent judgment can be influenced by a number of things, only one of which may be representations by a manufacturer as to a particular drug's relative safety and efficacy. *Thus, in the context of this case, establishing that Plaintiffs' injuries were caused by Defendants' misconduct would require an inquiry into the specifics of each doctor-patient relationship implicated by the lawsuit. In other words, each physician who prescribed Seroquel to an individual consumer or health and welfare fund member would have to be questioned as to whether his or her independent medical judgment was influenced by Defendants' misrepresentations, and to what extent. Furthermore, . . . this individualized inquiry would likely have to be conducted with regard to each consumer purchase transaction or third-party reimbursement payment . . . . This is precisely the type of "intricate, uncertain inquir[y]" the* Holmes *Court sought to prevent. Anza*, 547 U.S. at 460.
>
> . . . The highly complex damages assessment presented by this case strongly weighs against a finding that Plaintiffs were directly injured by Defendants' alleged fraudulent conduct.

*Id.* at 1344-45 (emphasis added); *see also Janssen*, 2008 WL 5413105, at *9 (dismissing putative RICO class action by TPPs for economic injuries allegedly sustained as a result of fraudulent promotion of prescription medication, finding failure to allege cognizable injury, and expressing doubt that plaintiffs could "ever properly plead proximate causation" based on the prescribing physician's role).

Moreover, the causal chain is further attenuated here because of decisions by the FDA, the Centers for Medicare and Medicaid Services ("CMS"), and PBMs that,

12

1  as several courts have observed, rely on independent committees of medical experts

2  to "review[] each drug for safety, efficacy, and cost" and determine whether and how

3  to include it on a plan's formulary.  *In re Rezulin Prods. Liab. Litig.*, 390 F. Supp. 2d

4  319, 326-27 (S.D.N.Y. 2005); *see also Int'l Union of Operating Eng'rs Local No. 68*

5  *Welfare Fund v. Merck & Co.*, 929 A.2d 1076, 1080-81, 1087 (N.J. 2007).[9]  Here, as

6  in *Ironworkers*, the uncertainty and speculation created by the necessary

7  intermediary decisions of these actors precludes a finding that the Funds have

8  alleged a direct injury.  *See Ironworkers*, 585 Supp. 2d at 1344-45; *see also Anza*,

9  547 U.S. at 458 (dismissing claim that alleged tax evasion by plaintiffs' competitor

10  enabled it to sell at lower prices because competitor "could have lowered its prices

11  for any number of reasons unconnected to [its] asserted pattern of fraud"); *Longmont*

12  *United Hosp. v. Saint Barnabas Corp.*, No. 06-2802, 2007 U.S. Dist. LEXIS 48187,

13  at *11 (D.N.J. June 22, 2007), *aff'd*, 2009 U.S. App. LEXIS 63 (3d Cir. Jan. 5, 2009)

14  (dismissing hospital's RICO claim where CMS and other government entities were

15  "intervening actor[s] between [the] alleged RICO violation" – submission of

16  allegedly inflated Medicare charges – "and the alleged harm" – reduced payments to

17  plaintiff).  As the *Longmont* court explained, "[w]here . . . the complained of harm

18  flows through an intermediary that has the discretion to act in a certain way or not" –

19  like the doctors, patients, PBMs, and CMS here – "there is no proximate cause

20  sufficient to establish a RICO violation."  2007 U.S. Dist. LEXIS 48187, at *18.[10]

21        Furthermore, the Funds' allegations that Amgen promoted Epogen® and

22  Aranesp® for unsafe off-label uses suggest the existence of parties who may actually

23

24  [9]    Sheet Metal Workers' reliance on Medicare coverage decisions further attenuates

25  the link between any action by Amgen and any payments the Fund has made.

26  [10]   *Accord In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 484 F.
Supp. 2d 973, 984 (D. Minn. 2007) (dismissing TPPs' claims for damages as "too

27  speculative" because they depended on "the independent choices of the doctors who
recommend[ed] the [pacemakers] to their patients and on the patients who decide[d]

28  to receive the devices"), *reconsideration granted in part on other grounds*, 2007 WL
2028137 (D. Minn. May 9, 2007).

DEFENDANT AMGEN INC.'S MOTION TO DISMIS

1  have direct economic injury claims and who would be better suited to "vindicate the

2  law . . . without any of the problems attendant upon suits by plaintiffs injured more

3  remotely," *Holmes*, 503 U.S. at 269-70, including ESA patients. *See Sybersound*

4  *Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1149 (9th Cir. 2008) (dismissing RICO

5  action by karaoke record producer against competitor for failure to "overcome the

6  proximate causation hurdle," noting that those more directly affected by defendants'

7  alleged infringement actions, "the copyright holders, can be expected to pursue their

8  own claims"); *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191

9  F.3d 229, 241 (2d Cir. 1999) (availability of individual smoker's actions "weigh[ed]

10  heavily against RICO standing" for health benefit plans); *see also infra* note 12.

11  **B.    The Funds Have Not Alleged a Cognizable Injury**

12  In addition to failing to satisfy RICO's direct injury standard, the Funds'

13  conclusory allegations of class-wide "overpayment" for ESAs do not satisfy RICO's

14  threshold requirement of "concrete" and actual, as opposed to "purely speculative"

15  damages. *Impress Commc'ns v. Unumprovident Corp.*, 335 F. Supp. 2d 1053, 1064-

16  65 (C.D. Cal. 2003) (dismissing RICO claim by insurance purchasers who alleged

17  that defendants falsely represented the quality of coverage, explaining that "premium

18  payments alone do not constitute injury" without allegations that plaintiffs actually

19  "receiv[ed] fewer benefits than those bargained for").  More than a year and a half

20  after filing this action, the Funds continue to allege only that, "upon information and

21  belief," they have paid for off-label prescriptions for ESAs. *See* Am. Compl. ¶¶ 17-

22  21.  Pleading injury on information and belief, where such facts are plainly available

23  to the Funds, is improper under the Federal Rules and inadequate to state a claim for

24  "concrete" injury under RICO. *See, e.g.*, *Bertucelli v. Carreras*, 467 F.2d 214, 215

25  n.4 (9th Cir. 1972) (*per curiam*) ("information and belief" pleading is improper

26  where the matter is within the knowledge of, or otherwise available to, plaintiff).[11]

27  ―――――――――――――

28  [11]   *Accord Geisinger Med. Ctr. v. Gough*, 160 F.R.D. 467, 469 (M.D. Pa. 1994)
(parties may not "plead a claim first and then . . . conduct the necessary investigation

*(cont'd)*

14

1    Moreover, the Funds have not alleged that any prescription for which any of

2  them paid was ineffective for or harmful to the member to whom it was prescribed,[12]

3  much less tied any such prescription to a misleading or unlawful statement by

4  Amgen.[13]  That the Funds may have paid for off-label prescriptions for ESAs does

5  not make such prescriptions "unnecessary" or "unsafe" for the patient for whom it

6  was prescribed or the result of any representation by Amgen.  *See Janssen,* 2008 WL

7  5413105, at *8 ("Plaintiffs do not plead a concrete financial loss . . . absent

8  allegations that the drug was inferior on some level and worth less than what they

9  paid for it."); *In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 288 F.3d

10  1012, 1017 n.1 (7th Cir. 2002) (the law does not support claims for damages by

11  "uninjured buyers . . . on the theory that the risk of failure made each [product] less

12  valuable"); *accord Rivera v. Wyeth-Ayerst Labs.,* 283 F.3d 315, 320 (5th Cir. 2002);

13  *cf. Maio v. Aetna, Inc.*, 221 F.3d 472, 484, 499-500 (3d Cir. 2000) (claims that

14  defendants' marketing induced plaintiffs to "pa[y] too much in premiums," without

15  specific allegations that the health care "actually received" was inadequate, did not

16  state a RICO injury).  "Without alleging that a product failed to perform as

17  advertised, a plaintiff has received the benefit of his bargain and has no basis to

18  recover purchase costs."  *Williams v. Purdue Pharma Co.,* 297 F. Supp. 2d 171, 176-

19  77 (D.D.C. 2003) (plaintiffs who sustained no injury or lack of efficacy from

20  (cont'd from previous page)
in support of it'"); *Sprague Farms, Inc. v. Providian Corp.*, 929 F. Supp. 1125, 1131

21  (C.D. Ill. 1996); *see also In re Bausch & Lomb Inc. Contact Lens Solution Prods.*
*Liab. Litig.*, MDL No. 1785, C/A No. 2:06-MN-77777, 2007 WL 3046682, at *6-7

22  (D.S.C. Oct. 11, 2007).

23  [12]   Moreover, such allegations could proceed, if at all, only through subrogation.  *See*
*Int'l Bhd. of Teamsters, Local 734 Health & Welfare Trust Fund v. Philip Morris*

24  *Inc.*, 196 F.3d 818, 821-22 (7th Cir. 1999) (funds cannot "bypass the elements of
subrogation actions" by bringing "direct[]" lawsuits*); accord Seibels Bruce Group,*

25  *Inc. v. R.J. Reynolds Tobacco Co.,* No. C-99-0593, 1999 U.S. Dist. LEXIS 15320, at
*11 (N.D. Cal. Sept. 21, 1999) ("It is well established that insurers are limited to

26  subrogation claims for the injuries . . . caused to their insureds."); *id.* at *24-25 & n.6.

27  [13]   Where, as here, the Funds do not allege that the medications harmed or were
ineffective for the Funds' beneficiaries, this Court "must infer that the drug did not

28  harm the beneficiaries."  *Janssen,* 2008 WL 5413105, at *8.

15

DEFENDANT AMGEN INC.'S MOTION TO DISMIS

1   medication could not sue for damages based on allegedly fraudulent advertising).

2      **C.   The Funds Have Not Alleged a RICO Enterprise**

3          The Funds' RICO claims also fail because they have not alleged the

4   fundamental element of an "enterprise," that is, "a group of persons associated

5   together *for a common purpose* of engaging in a course of conduct."  *United States v.*

6   *Turkette*, 452 U.S. 576, 583, 101 S. Ct. 2524, 2528, 69 L. Ed. 2d 246, 254 (1981)

7   (emphasis added).  An enterprise must be "an ongoing organization" that "function[s]

8   as a continuing unit."  *Id.* at 583.  "[P]laintiffs must plead specific facts, not mere

9   conclusory allegations, which establish the enterprise."  *Montesano v. Seafirst*

10  *Commercial Corp.*, 818 F.2d 423, 427 (5th Cir. 1987).

11         The Funds' purported "enterprise" – "consisting of Amgen, NAAC, and

12  CancerCare," Am. Compl. ¶ 5 – does not meet these requirements.  The Funds have

13  not alleged any facts that would establish that Amgen, CancerCare, and NAAC

14  shared the purported "common purpose" of "profit[ing] from the fraudulent

15  marketing and sale of EPO and [] extract[ing] excessive and illegal payments from

16  Plaintiffs and Class members."  *Id.* ¶ 96.  CancerCare and NAAC are nonprofit

17  organizations; they do not sell or otherwise distribute or profit from Epogen® and

18  Aranesp®.[14]  The Funds assert only conclusory and speculative allegations that

19  because Amgen has provided financial support to CancerCare and NAAC, it has

20  "control over" the organizations, and that its financial contributions were made "for

21  the purpose of promoting off-label uses of EPO to the medical community."  Am.

22  Compl. ¶ 96; *see also id.* ¶ 97.  Such speculative pleading plainly does not allege

23  "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550

24  U.S. at 570 (2007); *see also In re SmithKline Beecham Clinical Labs.*, 108 F. Supp.

25  2d 84, 97 (D. Conn. 1999) (dismissing claims where plaintiffs failed to allege facts

26  

27  _____
    [14]  According to their websites, "CancerCare is a national nonprofit organization that
    provides free, professional support services for anyone affected by cancer,"
    http://www.cancercare.org/, and NAAC "is a nonprofit organization dedicated to
28  improving the lives of people with anemia," http://www.anemia.org/.

---

16

1   establishing that each enterprise member shared same interest or purpose).

2         Additionally, the Funds have not alleged any facts that would support a

3   finding that the alleged FME participants constitute ongoing organizations or

4   function as continuing units.  For example, in stark contrast to *Odom v. Microsoft*

5   *Corp.*, 486 F.3d 541 (9th Cir. 2007), *cert. denied*, 128 S. Ct. 464, 169 L. Ed. 2d 325

6   (2007) (mem.), where plaintiffs alleged a cross-marketing agreement between Best

7   Buy and Microsoft and pled specific mechanisms established by defendants for the

8   commission of the predicate acts – "transferring plaintiffs' personal and financial

9   information from Best Buy to Microsoft" to "allow[] Microsoft to activate plaintiffs'

10  Internet accounts without their knowledge," *id.* at 552 – the Funds have not alleged

11  any facts demonstrating an association or relationship between Amgen, CancerCare,

12  and NAAC, other than Amgen's educational and other grants to the nonprofit

13  organizations.[15]  *See O & G Carriers, Inc. v. Smith*, 799 F. Supp. 1528, 1541

14  (S.D.N.Y. 1992) (dismissing RICO claim where, *inter alia*, "[t]here [was] no

15  explanation of the purported enterprise's nature, purpose or course of conduct";

16  rejecting "conclusory" allegations that merely "parrot[ed]" the statutory

17  requirements for a RICO enterprise); *Moll v. US Life Title Ins. Co. of N.Y.*, 654 F.

18  Supp. 1012, 1032 (S.D.N.Y. 1987) (dismissing RICO claim where plaintiffs "fail[ed]

19  to specify how [the alleged] members joined together as a group to achieve" their

20  common purpose, or present "any factual allegations regarding the continuity of

21  structure or personnel of [the alleged] group").[16]

22

23

24  [15]  Of course, the Funds do not, and cannot, allege that Amgen is the *only* contributor

25  to CancerCare or NAAC.  *See, e.g.*, CancerCare 2007 Annual Report at 18-31,
    *available at* http://www.cancercare.org/pdf/annual_report/annual_report_2007.pdf;

26  NAAC, Sponsoring NAAC, *available at* http://www.anemia.org/sponsors/.

27  [16]  *See also Odom*, 486 F.3d at 555-56 (Silverman, J., concurring with four other
    justices) (finding allegations of marketing contract alone insufficient and stating that

28  an associated-in-fact enterprise requires "some minimal structure, coordination, or
    ordering principle to distinguish them from a run-of-the-mill conspiracy").

**D.    The Funds Have Not Pled Their RICO Claims with Specificity**

The Funds have not, as this Court directed, pled any alleged RICO predicate acts of mail and wire fraud with specificity under Rule 9(b).  As the Ninth Circuit has explained, to satisfy Rule 9(b), a RICO mail and wire fraud claim must identify "'the time, place, and specific content of [each] false representation[] as well as the identities of the parties to the misrepresentation.'"  *Odom*, 486 F.3d at 553 (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co*., 806 F.2d 1393, 1401 (9th Cir. 1986)).  In particular, "[t]o link their own injuries to the alleged RICO enterprise, plaintiffs must allege *what happened to them*," as opposed to a putative class.  *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 659 (3d Cir. 1998) (emphasis added).  "At the least, this includes specific allegations as to which fraudulent tactics were used against [Plaintiffs] . . . ."  *Id.*  The purpose of requiring such specificity is "to 'prohibit [] plaintiff[s] from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.'"  *In re Stac Elecs. Sec. Litig.*, 89 F.3d at 1405 (citation omitted); *accord Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001) (specificity requirement is intended to safeguard "'[defendants] from the harm that comes from being subject to fraud charges'") (citation omitted); *United States ex rel. Rost v. Pfizer, Inc.*, 507 F.3d 720, 733 (1st Cir. 2007) (affirming dismissal of *qui tam* claims related to off-label promotion for failure to meet Rule 9(b), holding that "[i]t is a serious matter to accuse a person or company of committing fraud, and the mere accusation often causes harm").

Here, the Funds do not allege "what happened to them" or to any doctor, patient, or PBM who may have made a decision to prescribe, take, list, or reimburse for any purported off-label ESA prescription as a result of any statement by the alleged FME members.  Instead, the Funds have pled only a class-wide RICO claim based entirely on *unidentified* mail and wire transmissions, in the form of "marketing materials," "press releases," and educational materials allegedly "utilized to falsely promote off-label uses," and unspecified "correspondence, contracts, and agreements

18

1   between the members of [] the enterprise[]."  Am. Compl. ¶ 100.  Such conclusory

2   allegations, which fail to refer to any specific incidences of mailings or use of the

3   wires, are insufficient.  *See Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806

4   F.2d 1393, 1401 (9th Cir. 1986) (finding allegations of mail fraud insufficient where

5   "the allegations describing the operative events failed to mention any use of the

6   mails or telephones"); *U.S. Concord, Inc. v. Harris Graphics Corp.*, 757 F. Supp.

7   1053, 1061 (N.D. Cal. 1991) (dismissing mail fraud claims under Rule 9(b);

8   allegations that defendant mailed documents containing false representations were

9   insufficient where plaintiff did not identify the correspondence or the manner in

10  which it was false); *O & G Carriers*, 799 F. Supp. at 1540 (RICO claim failed where

11  complaint did not specify "which allegations relate[d] to mail fraud or wire fraud").

12      As established above, the Funds also fail to allege how any statement by

13  Amgen – such as any press release announcing preliminary study results – was

14  fraudulent.  As this Circuit has explained:

15          "The plaintiff must set forth what is false or misleading about a
16          statement, and why it is false.  In other words, the plaintiff must set
            forth an explanation as to why the statement or omission complained
17          of was false or misleading."  Further, the statement or omission must
18          be shown to have been false or misleading *when made*.

19  *In re Stac Elecs.*, 89 F.3d at 1404 (quoting *In re Glenfed, Inc. Sec. Litig.*, 42 F.3d

20  1541, 1548-49 (9th Cir. 1994)); *see also Stewart v. Wachowski*, No. CV 03-2873,

21  2004 WL 2980783, at *6 (C.D. Cal. Sept. 28, 2004) (dismissing mail and wire fraud

22  claims under Rule 9(b) where complaint failed to allege "the manner in which

23  defendants' communications were fraudulent, or the manner in which they furthered

24  the fraudulent scheme"); *Camp*, 956 F. Supp. at 1551 ("[T]he plaintiff must set forth

25  the circumstances indicating falseness").[17]  As the Court has already found,

26

27  [17]   *See also In re Rexplore, Inc. Sec. Litig.*, 671 F. Supp. 679, 691 (N.D. Cal. 1987)
        (mail and wire fraud claims were "conclusory" and inadequate where plaintiffs failed
28      to allege details, such as "whether interstate telephone calls were made and if so,
        how they are linked to the fraud").

1  allegations of off-label promotion alone do not satisfy this standard.  *See* MDL Order

2  at 1289 ("Because Plaintiffs fail to set forth how the statement [about IV injection of

3  EPO] on DaVita's website is fraudulent, it cannot support a charge of wire fraud.").[18]

4       Several decisions in "off-label" qui tam actions brought on behalf of the

5  government under the False Claims Act further establish that the Funds have not

6  properly pled any of their fraud-based claims.  *See, e.g.*, *United States ex rel. West v.*

7  *Ortho-McNeil Pharm., Inc.*, No. 03 C 8239, 2007 WL 2091185, at *4 (N.D. Ill. July

8  20, 2007) (dismissing action where plaintiff failed to allege, pursuant to Rule 9(b),

9  "which sales representatives made the statements, when they made them, to which

10 doctors they made them or how they communicated them").[19]

11 **III.   THE FUNDS' CLAIMS ARE BARRED BY ERISA**

12       The Funds' state law and RICO claims attempt to circumvent not one, but two

13 federal statutory schemes:  the FDCA and ERISA, 29 U.S.C. §§ 1001 *et seq.*[20]  The

14 Funds' claims are preempted by ERISA both because their adjudication would

15 require the Court to interpret the Funds' employee benefit plans and because they

16 conflict with ERISA's comprehensive scheme of civil remedies.

17       ERISA preempts "any and all State laws [that] . . . relate to any employee

18 benefit plan," 29 U.S.C. § 1144(a), that is, those that have "'a connection with or

19 reference to such a plan.'"  *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*,

20

21 [18]  The Funds' allegations also lack the specific "time-place-manner-content details"
   required for claims of mail and wire fraud.  *See Alan Neuman Prods., Inc. v. Albright*,
22 862 F.2d 1388, 1392-93 (9th Cir. 1988); *Tate v. Pac. Gas & Elec. Co.*, 230 F. Supp.
   2d 1072, 1084 (N.D. Cal. 2002).  Amgen respectfully submits that merely alleging
23 use of the mail and wires in the "United States," *see* SMW Order at 11, does not
   meet Rule 9(b) as applied in this Circuit.  *See Odom*, 486 F.3d at 553; *Camp*, 956 F.
24 Supp. at 1551 (a court should not "infer an element necessary to allege mail or wire
   fraud merely because people usually use the mails [or wires] to transact business").

25 [19]  *Accord United States ex rel. McDermott v. Genentech, Inc.*, No. 05-147-P-C,
   2006 WL 3741920, at *10-13 (D. Me. Dec. 14, 2006); *United States ex rel. Hess v.*
26 *Sanofi-Synthelabo, Inc.*, No. 4:05CV570, 2006 WL 1064127, at *6-11 (E.D. Mo.
27 Apr. 21, 2006).

28 [20]  The Funds, which provide medical benefits to members of employee unions, are
   subject to ERISA.  *See* 29 U.S.C. § 1002(1), (3); Am. Compl. ¶¶ 15, 18-19.

No. C 07-1027, 2007 WL 1394155, at *3 (N.D. Cal. May 9, 2007) (citation omitted). The Funds allege that Amgen caused physicians to write, and the Funds to pay for, "unnecessary" or "unsafe" prescriptions of Aranesp® and Epogen®. *See, e.g.*, Am. Compl. ¶¶ 134, 139, 148. The Funds essentially seek to reverse their own determinations that prescriptions written by doctors for plan members were covered by the plans, and to recover from Amgen money the Funds spent on prescriptions pursuant to those plans. These claims thus arise from the operation of, and relate to, the Funds' ERISA plans and implicate relationships between ERISA entities.

Moreover, it is well settled that ERISA preempts state law claims that would require the court to interpret plan terms. *See Peralta v. Hispanic Bus., Inc.*, 419 F.3d 1064, 1069 (9th Cir. 2005). Adjudicating the Funds' claims would require the Court to interpret and apply plan terms to determine whether a Fund could have actually properly rejected a claim for an ESA as a "medically unnecessary" or "off-label" treatment. Courts have consistently found similar claims preempted. In *Davis v. SmithKline Beecham Clinical Laboratories, Inc.*, 993 F. Supp. 897 (E.D. Pa. 1998), for example, the plaintiffs brought consumer protection claims on behalf of ERISA funds to recoup allegedly inflated fees for lab testing. *Id.* at 897. The claims were preempted because they sought "relief for violations of the 'terms of the plan,' e.g., provisions allowing payment only for 'medically necessary' tests." *Id.* at 899 (noting that determining amount of overpayment would require "interpretation of ERISA plans setting forth the criteria for calculating such payments").[21]

Similarly, courts have held that claims, like the Funds', seeking to recover money paid or due under an ERISA plan, are preempted by ERISA's exclusive enforcement scheme. *See Cleghorn v. Blue Shield of California*, 408 F.3d 1222,

---

[21]  *Accord In re SmithKline Beecham Clinical Labs.*, 108 F. Supp. 2d at 111 (ERISA preempted plans' claims that defendants caused plaintiffs' overpayments because claims "involve[d] the operation and management of the ERISA plans"); *see also Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Neurobehavioral Assocs., P.A.*, 53 F.3d 172, 173-74 (7th Cir. 1995); *Agranoff v. LensCrafters, Inc.*, No. 07 C 4933, 2007 WL 4557080, at *2 (N.D. Ill. Dec. 21, 2007).

1225-27 (9th Cir. 2005) (affirming dismissal of UCL claims to recover money under ERISA plan).[22]  The Supreme Court has held that "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted."  *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209, 124 S. Ct. 2488, 2495, 159 L. Ed. 312 (2004).  Because the Funds, as ERISA fiduciaries, have an equitable remedy under ERISA, their state law claims seeking additional remedies are preempted.  Just as the Funds cannot use RICO to enforce the FDCA, they cannot use it to obtain additional remedies unavailable under ERISA.

## IV.   THE FUNDS CANNOT PLEAD CLAIMS UNDER CALIFORNIA LAW

The Complaint should also be dismissed because the non-resident Funds plead their state law claims exclusively under California's consumer protection laws.

### A.   California's Consumer Protection Laws Do Not Extend to Out-of-State Plaintiffs Alleging Conduct and Injury Outside of California

California law does not support the extension of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"), and False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.* ("FAL"), to the claims of the non-resident Funds here.  California's "presumption against the extraterritorial application of its statutes" is well established.  *Meridian Project Sys., Inc. v. Hardin Constr. Co.*, 404 F. Supp. 2d 1214, 1225 (E.D. Cal. 2005).  California courts have repeatedly held that the UCL does not apply to conduct occurring outside of California that injures non-residents.  *See id.* at 1225; *Van Slyke v. Capital One Bank*, No. C 07-00671, 2007 WL 3343943, at *14 (N.D. Cal. Nov. 7, 2007) ("California courts have been highly critical of attempts to apply the [UCL] outside California borders for transactions that do not affect California residents and did not take place

---

[22]   To the extent the Funds' claims would require second-guessing Medicare's coverage determinations, they also would be preempted by the federal regime governing Medicare.  *See Cong. of Cal. Seniors v. Catholic Healthcare W.*, 87 Cal. App. 4th 491, 508-09, 104 Cal. Rptr. 2d 655, 668 (2001).

1   within the state").[23]   In doing so, California courts have refused to accept conclusory

2   assertions, like the Funds', that a non-resident may invoke the UCL based solely on a

3   defendant's California location.  *See Meridian*, 404 F. Supp. 2d at 1225 (dismissing

4   UCL claims of Canadian firm against California competitor because "the specific

5   misconduct identified . . . occurred in Chicago, Illinois – clearly outside the purview

6   of the UCL").[24]   The Ninth Circuit recently re-affirmed this proposition.  *See*

7   *Sullivan v. Oracle Corp.*, 547 F.3d 1177, 1187 (9th Cir. 2008) (affirming finding that

8   non-resident employees of corporation with principal place of business in California

9   could not maintain UCL claims for alleged Fair Labor Standards Act violations

10  based on work plaintiffs performed outside of California).

11      The Funds do not allege any connection to California.  Although their

12  Complaint fails to identify any prescription for which any Fund seeks a refund, this

13  Court can reasonably infer that such prescriptions were written by physicians and

14  received by patients in the Funds', or their members', home states.  *See Meridian*,

15  404 F. Supp. 2d at 1225 ("[Plaintiff] is a Canadian corporation; therefore, the court

16  infers that its injuries occurred there, and not in California.").  Similarly, while the

17  Funds do not identify any communication from Amgen to the Funds or to any doctor

18  who wrote a prescription for a Fund member, any such communication would have

19  been received and acted upon, if at all, in the Funds' home states.  This Court's

20  decisions granting Amgen's transfer motions in several of the Funds' actions support

21

22  [23]   *Cf. In re Paxil Litig.*, 212 F.R.D. 539, 544 (C.D. Cal. 2003) ("A federal court
23  sitting in diversity must generally apply the substantive law of the state in which
    each individual plaintiff resides.").

24  [24]   *See also In re Nat'l W. Life Ins. Deferred Annuities Litig.*, 467 F. Supp. 2d 1071,
25  1089 (S.D. Cal. 2006) (allegations that "defendant transacted substantial business in
    California and failed to properly train and supervise agents about California law"
26  were insufficient to maintain UCL claim where Pennsylvania plaintiff bought
    annuity in Pennsylvania); *cf. Lewallen v. Medtronic USA, Inc.*, No. C 01-20395,
27  2002 WL 31300899, at *5 (N.D. Cal. Aug. 28, 2002) (rejecting presumption that
    California law applied to nationwide class "merely because the defendants are
28  located in California"); *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp.
    2d 1011, 1028 (N.D. Cal. 2007).

23

DEFENDANT AMGEN INC.'S MOTION TO DISMIS

1 | the conclusion that the Funds cannot maintain their claims under California law:

2
3
4
5

> [T]he operative facts allegedly giving rise to [plaintiffs'] claims –
> such as the prescription of the drugs at issue to members of [plaintiffs']
> health benefit plan[s], the purchases of and reimbursements for those
> prescription medicines, any representations made by Amgen to the
> prescribing physicians and/or reliance upon such representations –
> occurred in the plaintiffs' home states.

6
7
8
9
10

*United Food & Commercial Workers Cent. Pa. & Reg'l Health & Welfare Fund v. Amgen, Inc.*, No. CV 07-3623, 2007 WL 4144676, at *8 (C.D. Cal. Nov. 13, 2007) (Gutierrez, J.) ("*United Food*").  Thus, as in *Meridian*, because "the specific misconduct" alleged occurred, if at all, "outside the purview of the UCL," the Funds' claims must be dismissed.  *Meridian*, 404 F. Supp. 2d at 1225.

11
12

**B.    California Law Would Not Apply to the Funds' State Law Claims Under California's Choice-of-Law Rules**

13
14
15
16
17
18
19
20
21
22
23

Even if the statutes' text actually allowed the extraterritorial application of the UCL and FAL to the Funds' claims, California's choice-of-law rules would preclude it.  *See Wash. Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 918-19, 103 Cal. Rptr. 2d 320, 330 (2001) (even where California law may be applied constitutionally to a foreign plaintiff, the court must determine whether it *should* apply); *accord Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1188 (9th Cir.), *amended by* 273 F.3d 1266 (9th Cir. 2001).  Under California's government interest analysis, when state laws conflict, the governing law is that of the state whose interest would be more impaired if its laws were not applied.  *See Wash. Mut. Bank*, 24 Cal. 4th at 919-20, 103 Cal. Rptr. 2d at 330-31.  Invariably, that is the state where the plaintiff resides and the injury occurred, not the state of defendant's corporate headquarters.[25]

24
25
26
27
28

---

[25]  For similar reasons, courts have frequently rejected attempts, like the Funds', to apply one state's consumer protection laws to a nationwide class.  *See, e.g.*, *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1016, 1018 (7th Cir. 2002) (finding "a uniform place-of-the-defendant's-headquarters rule" improper; noting "[s]tate consumer-protection laws vary considerably, and courts must respect these differences rather than apply one state's law to sales in other states with different rules."); *see also Zinser*, 253 F.3d at 1188; *Tidwell v. Thor Indus., Inc.*, No. 05-CV-2088-L, 2007 U.S. Dist. LEXIS 21819, at *23 (S.D. Cal.

*(cont'd)*

DEFENDANT AMGEN INC.'S MOTION TO DISMIS

1   *See, e.g.*, *In re Bausch & Lomb*, 2007 WL 3046682, at *5 (dismissing New York

2   consumer fraud and other claims involving marketing of contact lens solution;

3   finding plaintiffs' home states of California and Pennsylvania "ha[d] a much greater

4   interest in th[e] controversy given that plaintiffs are residents of those states, they

5   purchased the product in those states, and those states have an interest in being able

6   to regulate products sold there"); *cf. Heindel*, 381 F. Supp. 2d at 378 (holding that

7   Pennsylvania law applied to Pennsylvania plaintiffs alleging deceptive drug

8   marketing because, *inter alia*, "the most important aspects of the transaction

9   underlying th[e] lawsuit [were] the decisions of the physician and the relationship

10  between doctor and patient, all of which occurred in Pennsylvania").[26]

11         Here, the Funds' home states' consumer protection laws conflict directly with

12  California's in a number of critical ways, including:

13         Statutory Bars:

14         o   The marketing of prescription medicines cannot form the basis for a

15             claim under the Michigan Consumer Protection Act ("MCPA") because

16             that activity is regulated by the FDA.  *See* Mich. Comp. Laws Ann.

                § 445.904(1)(a) (West 2008); *Duronio v. Merck & Co.*, No. 267003,

17             2006 WL 1628516, at *6-7 (Mich. Ct. App. June 13, 2006).

18         o   New Jersey does not permit consumer fraud claims involving product-

19             related harm as they are subsumed by New Jersey's Product Liability

20  (cont'd from previous page)
    Mar. 26, 2007); *Gartin v. S & M Nutec LLC*, 245 F.R.D. 429, 439 (C.D. Cal. 2007);
21  *Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392, 414 (E.D. Pa. 2006).
    In addition, applying California law to the Funds' claims would conflict with "[a]
22  basic principle of federalism" – "that each State may make its own reasoned
    judgment about what conduct is permitted or proscribed within its borders." *State*
23  *Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 422, 123 S. Ct. 1513, 1523, 155
    L. Ed. 2d 585, 604 (2003).
24
    [26]  Indeed, one of Plaintiffs' co-lead counsel, Hagens Berman, has readily pleaded, in
25  other putative class actions by health benefit plans against pharmaceutical
    manufacturers, that the laws of each plaintiff's home state should govern.  *See*
26  *Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1232 (S.D. Fla. 2007) ("The parties
    agree that the [Pennsylvania] Fund's claims are governed by Pennsylvania law.").
27  Similarly, in the *Ironworkers* TPP action involving the same Ironworker Funds and
    counsel here, plaintiffs pled their state law claims under the laws of the individual
28  states.  *See Ironworkers*, 585 F. Supp. 2d at 1345-46.

25

DEFENDANT AMGEN INC.'S MOTION TO DISMIS

Act.  *See Sinclair v. Merck & Co.*, 948 A.2d 587, 595-96 (N.J. 2008).

Class Action Limitations:

o   The Tennessee Consumer Protection Act ("TCPA") "does not provide
    for class certification of claims brought thereunder."  *Walker v. Sunrise
    Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 313 (Tenn. 2008).

o   The MCPA permits class actions to be brought only "on behalf of
    persons residing or injured in" Michigan.  Mich. Comp. Laws Ann.
    § 445.911(3) (West 2008); *see also Durant v. Servicemaster Co.*, 208
    F.R.D. 228, 233 (E.D. Mich. 2002), *vacated on other grounds*, 109 F.
    App'x 27 (6th Cir. 2004).

Standing Limitations:

o   Pennsylvania's Unfair Trade Practices and Consumer Protection Law
    ("UTPCPL") limits standing to purchasers of goods or services "for
    personal, family or household purposes."  73 Pa. Cons. Stat. Ann.
    § 201-9.2(a) (West 2008).  A plaintiff must allege that it obtained the
    good for its own "personal or household purposes *as opposed to
    business purposes*."  *Weinberg v. Sun Co.*, 777 A.2d 442, 446 (Pa. 2001)
    (emphasis added).  In addition, the UTPCPL "protects only those who
    *obtain* goods or services in exchange for money or its equivalent, not
    those who may receive a benefit from, or be indirectly injured by, the
    purchase."  *Taylor v. Nelson*, No. Civ. A. 02-6558, 2006 WL 266052, at
    *9 (E.D. Pa. Jan. 31, 2006) (emphasis added); *see also In re Rezulin
    Prods. Liab. Litig.*, 390 F. Supp. 2d 319, 332-33 (S.D.N.Y. 2005).
    Further, the UTPCPL does not apply to prescription drug transactions
    because a patient cannot lawfully become a "purchaser" without a
    doctor's approval and action.  *See Albertson v. Wyeth Inc.*, 63 Pa. D. &
    C. 4th 514, 538-39 (Ct. Com. Pl. 2003); *Heindel*, 381 F. Supp. 2d at 384.

o   The New Jersey Consumer Fraud Act limits standing to "consumers."
    *See Conte Bros. Auto., Inc. v. Quaker State-Slick 50, Inc.*, 992 F. Supp.
    709, 716 (D.N.J. 1998), *aff'd*, 165 F.3d 221 (3d Cir. 1998).  To be a
    "consumer" under the Act, the plaintiff must actually use the items
    purchased, or be one who "'diminishes or destroys [the] utilit[y]'" of the
    purchased product.  *Windsor Card Shops, Inc. v. Hallmark Cards, Inc.*,
    957 F. Supp. 562, 567 n.6 (D.N.J. 1997) (citation omitted).

o   The Illinois Consumer Fraud and Deceptive Business Practices Act
    ("ICFA") does not allow non-consumer commercial entities to bring

DEFENDANT AMGEN INC.'S MOTION TO DISMIS

claims unless they satisfy a "consumer nexus test." *Stepan Co. v. Winter Panel Corp.*, 948 F. Supp. 802, 806 (N.D. Ill. 1996).[27]

o   The MCPA does not to extend to businesses. *See German Free State of Bavaria v. Toyobo Co.*, 480 F. Supp. 2d 958, 969 (W.D. Mich. 2007) (noting that "the legislative history of the Act indicates that it was designed to protect consumers as opposed to businesses or commercial or public entities").

Differences in Remedies:

o   While the TCPA allows plaintiffs to recover "actual damages," attorney's fees and costs, and, in certain cases, treble damages, Tenn. Code Ann. § 47-18-109(a), (e) (West 2002), and the ICFA provides for actual economic damages, and attorney's fees and costs, 815 Ill. Comp. Stat. 505/10a(a), (c) (2008), the UCL limits plaintiffs to restitution and injunctive relief. *See* Cal. Bus. & Prof. Code § 17203 (West 2008).

The Funds' home states thus impose significant restrictions on consumer protection claims, and in some cases provide certain additional remedies, beyond those provided under California law.  These restrictions and remedies, which reflect careful policy determinations by those states, confirm that the Funds' states have "a strong interest in applying their own consumer protection laws to their citizens."[28] *Baker*, 440 F. Supp. 2d at 414; *accord Agostino v. Quest Diagnostics Inc.*, No. 04-4362, 2009 WL 348898, at *21-22 (D.N.J. Feb. 11, 2009); *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 348 (D.N.J. 1997)  By contrast, California's interest in applying the UCL to claims based on alleged conduct outside

---

[27]  "'[S]omething more must be alleged than a mere effect on consumers.'" *Pressalite Corp. v. Matsushita Elec. Corp. of Am.*, No. 02 C 7086, 2003 U.S. Dist. LEXIS 5600, at *30 (N.D. Ill. Apr. 3, 2003).

[28]  The Funds' claims are also fatally defective under their home states' laws for several of the reasons that they fail under California law.  Like California, their home states require proximate causation.  *See, e.g., Perry v. Am. Tobacco Co.*, 324 F.3d 845, 851 (6th Cir. 2003); *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 160 (Ill. 2002); *N.J. Citizen Action v. Schering-Plough Corp.*, 842 A.2d 174, 178 (N.J. Super. Ct. App. Div. 2003).  Michigan and Pennsylvania, like California, also require reliance. *See Kussy v. Home Depot U.S.A. Inc.*, No. 06-12899, 2006 WL 3447146, at *5-7 (E.D. Mich. Nov. 28, 2006); *Weinberg*, 777 A.2d at 446.

DEFENDANT AMGEN INC.'S MOTION TO DISMIS

of California is minimal at best.  *See Paulo v. Bepex Corp.*, 792 F.2d 894, 896 (9th Cir. 1986) (holding Canadian law governed claims of plaintiff injured there by California product, noting, California "has little interest in applying its law to compensate citizens of Ontario"); *accord Vestal v. Shiley, Inc.*, No. SACV96-1205, 1997 WL 910373, at *3 (C.D. Cal. Nov. 17, 1997).  But even assuming that California does have an interest in applying its laws to the Funds' claims, the Funds' home states' interests in limiting and defining the scope of recovery by their residents for alleged consumer fraud taking place in those states would be more significantly impaired by the application of California law.  As one court recently explained in finding that Pennsylvania's consumer protection statute, rather than the UCL, applied to claims involving conduct in Pennsylvania:

> Both California and Pennsylvania have an interest in the case and generally promote the policy of consumer protection.  California has an interest in protecting its residents, such as Captive Media, from the activity barred in the California UCL.  On the other hand, Pennsylvania has an interest in choosing the scope of unfair business practices for which a person or corporation is liable in its state, and, by the same token, protecting its residents from the extraterritorial effect of statutes for which Pennsylvania has no counterpart.
>
> Finally, applying Pennsylvania law to conduct occurring in Pennsylvania would advance certainty, predictability and uniformity of result.

*Clubcom, Inc. v. Captive Media, Inc.*, No. 02:07-cv-1462, 2009 WL 249446, at *8 (W.D. Pa. Jan. 31, 2009); *see also In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1028 (N.D. Cal. 2007) (dismissing class claims under the UCL and California antitrust laws, noting that "[i]t is hard to see why the laws of other states should be tossed overboard and their residents remitted to California law for transactions that . . . are local in nature").[29]  Moreover, "suits by California

---

[29]  *Accord Love v. Mail on Sunday*, No. CV057798, 2006 WL 4046180, at *6 (C.D. Cal. Aug. 15, 2006) (finding U.K.'s interest in applying its laws to alleged conduct occurring there would be "unacceptably impair[ed]" if California law were applied);

*(cont'd)*

28

1   residents adequately serve to deter California companies from unlawful practices."

2   *Vestal*, 1997 WL 910373, at *3 (citing *Stangvik v. Shiley Inc.*, 1 Cal. Rptr. 2d 556,

3   565 (1991)).

4   **V.      THE FUNDS' CLAIMS FAIL UNDER CALIFORNIA LAW**

5           Even if California law were to apply, the Funds' state law claims would fail

6   for lack of standing and failure to plead with specificity.  To maintain an action

7   under the UCL or FAL, a plaintiff must plead and prove that it has both "suffered

8   injury in fact" and "lost money or property *as a result of*" the alleged misconduct.

9   Cal. Bus. & Prof. Code § 17204 (West 2008) (emphasis added); *id.* § 17535.

10  Because the Funds fail to adequately allege both a cognizable injury and a causal

11  nexus to Amgen's purported conduct, they lack standing to maintain claims under

12  the UCL and FAL, in addition to RICO.  *See supra* Part II.A-B; *see also Ironworkers*,

13  585 F. Supp. 2d at 1345-46 (holding consumer fraud claims failed for same reason

14  that RICO claims did).  In particular, "the UCL, as amended by Proposition 64,

15  makes clear that a showing of causation is *required* as to each representative

16  plaintiff," and that where, as here, a claim is based on allegedly misleading

17  statements, a plaintiff must allege that it "actually relied on" such statements.  *Laster*

18  *v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005) (dismissing

19  UCL and FAL claims for failure to allege reliance "on Defendants' advertisements in

20  entering into the transactions"), *aff'd,*  252 Fed. App'x 777 (9th Cir. 2007).[30]  The

21  Funds do not allege that they, or even any doctor, patient, PBM, or Fund decision-

22

23  (cont'd from previous page)
    *In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 148-50, 161
24  (S.D.N.Y. 2008) (under California's choice-of-law rules, "the interests of the state of
    purchase would be most impaired if its consumer-fraud laws were not applied" even
25  though "portions of the defendants' allegedly deceptive marketing may have been
    conceived at the defendants'" headquarters); *Barbara's Sales, Inc. v. Intel Corp.*, 879
26  N.E.2d 910, 920-21 (Ill. 2007) (reversing application of UCL to non-residents
    alleging misrepresentations from California:  "California has no interest in extending
27  its laws to noncitizens and to actions that occurred outside of California borders").

28  [30]   *Accord Gonzalez v. Proctor & Gamble Co.*, 247 F.R.D. 616, 625-26 (S.D. Cal.
    2007); *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 947-49 (S.D. Cal. 2007).

DEFENDANT AMGEN INC.'S MOTION TO DISMISS

1  maker relied on any alleged misrepresentation by Amgen in deciding whether to

2  prescribe, take, list, or reimburse for ESAs.[31]  The Funds' failure to make these

3  allegations, eighteen months after filing their actions, is further proof of their

4  causation defects and the speculative nature of their claims.

5          The Funds' allegations of deceptive or fraudulent conduct further fail because

6  their state law claims, like their RICO claims, do not meet the heightened pleading

7  requirements of Rule 9(b).  *See Meridian*, 404 F. Supp. 2d at 1225 (dismissing UCL

8  claims for failure to "describe the who, what, where, when and how of [the] alleged

9  intrastate misrepresentations"); *Meinhold v. Sprint Spectrum, L.P.*, No. Civ. S-07-

10  00456, 2007 U.S. Dist. LEXIS 35806, at *19 (E.D. Cal. May 16, 2007); *accord*

11  *Wang & Wang LLP v. Banco Do Brasil, S.A.*, No. Civ. S-06-00761, 2007 WL

12  915232, at *1-2, *4 (E.D. Cal. Mar. 26, 2007); *supra* Part II.D.

13                              <u>**CONCLUSION**</u>

14          For all of the foregoing reasons, Amgen respectfully requests that the Court

15  dismiss the Amended Complaint in its entirety, and with prejudice.

16  Dated:  March 6, 2009                    /s/ Darrel J. Hieber
                                             Darrel J. Hieber
17                                           darrel.hieber@skadden.com
                                             Cal. Bar No. 100857
18                                           SKADDEN, ARPS, SLATE,
                                                MEAGHER & FLOM LLP
19                                           300 South Grand Avenue
                                             Los Angeles, California 90071
20                                           Telephone:  (213) 687-5000
                                             Facsimile:  (213) 687-5600
21
22                                           Sheila L. Birnbaum
                                             (admitted *Pro Hac Vice*)
23                                           sheila.birnbaum@skadden.com
                                             Barbara Wrubel
24                                           (admitted *Pro Hac Vice*)
                                             barbara.wrubel@skadden.com
25                                           Mark S. Cheffo

26  [31]  As this Court held in its decisions granting transfer, "in order to show causation,
    [each] Plaintiff will have to prove . . . that [each] prescription was for an off-label
27  use, and that the prescribing physician based his or her decision to prescribe . . . on a
    communication from Amgen, rather than his or her clinical experience, training and
28  independent medical judgment."  *United Food*, 2007 WL 4144676, at *6.

                                             30

1

(admitted *Pro Hac Vice*)
mark.cheffo@skadden.com
2
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
3
Four Times Square
New York, New York 10036
4
Telephone:  (212) 735-3000
Facsimile:  (212) 735-2000
5

Robert A. Limbacher
6
(admitted *Pro Hac Vice*)
Will W. Sachse
7
(admitted *Pro Hac Vice*)
DECHERT LLP
8
Cira Center
2929 Arch Street
9
Philadelphia, Pennsylvania 19104
Telephone:  (215) 994-4000
10
Facsimile:  (215) 994-2222

11

Mary Beth Cantrell
Laurie H. Polinsky
12
Moze Cowper
Amgen Inc.
13
One Amgen Center Drive
Thousand Oaks, California  91320
14
Telephone:  (805) 447-1000
Facsimile:  (805) 447-1010
15

Attorneys for Defendant Amgen Inc.
16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT AMGEN INC.'S MOTION TO DISMIS